FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 09, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JENNIFER W., | No. 1:25-CV-03180-ACE |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION |
| v. | |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY, | **ECF Nos. 12 & 14** |
| Defendant. | |

**BEFORE THE COURT** is Plaintiff's Opening Brief and Defendant's Brief in response. ECF No. 12, 14. Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney Sarah Moum represents Defendant. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's motion and **DENIES** Plaintiff's motion.

## JURISDICTION

Plaintiff protectively filed an application for Supplemental Security Income benefits in February 2023, alleging a disability onset date of January 1, 2018. Tr. 206. The application was denied initially and upon reconsideration. Administrative Law Judge (ALJ) David Johnson held a hearing on April 24, 2025, Tr. 39-74, and issued an unfavorable decision on May 23, 2025, Tr. 17-34. At the hearing, the alleged onset date was amended to February 21, 2023. Tr. 45. The Appeals Council denied Plaintiff's request for review on August 18, 2025, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

judicial review, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on October 17, 2025. ECF No. 1.

## STANDARD OF REVIEW

The ALJ is tasked with "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a),

ORDER GRANTING DEFENDANT'S MOTION . . . - 2

416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four the claimant bears the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five and the burden shifts to the Commissioner to show: (1) the claimant can perform other substantial gainful activity; and (2) a significant number of jobs exist in the national economy which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE FINDINGS

On May 23, 2025, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 17-34.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the February 21, 2023 amended alleged onset date. Tr. 20.

At step two, the ALJ determined Plaintiff had the following severe impairments: substance use disorder with substance-induced cardiomyopathy, heart disease, hypertension, and asthma. Tr. 20.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 24.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform light work that does not require more than occasional balancing, stooping, kneeling, crouching, crawling, or climbing; and that does not require concentrated exposure to pulmonary irritants or extreme cold. Tr. 25.

///

ORDER GRANTING DEFENDANT'S MOTION . . . - 3

At step four, the ALJ found Plaintiff did not have past relevant work.  Tr. 31.

At step five, the ALJ found that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, including the jobs of marker, cashier II, and advertising material distributor.  Tr. 32-33.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the amended alleged onset date, February 21, 2023, through the date of the decision, May 23, 2025.  Tr. 33-34.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff argues the ALJ reversibly erred by (1) not properly assessing the cardiac listings; (2) refusing to consider or exhibit medical opinion evidence from Plaintiff's cardiology office; (3) finding Plaintiff's stroke was non-severe; (4) not fully and fairly developing the record; and (5) not properly assessing Plaintiff's testimony.  ECF No. 12 at 1.

## DISCUSSION

**A.    Step Three**

Plaintiff asserts the ALJ erred at step three by failing to properly assess the listing for chronic heart failure, Listing 4.02.  ECF No. 12 at 3-6.

At step three, the ALJ considers whether one or more of a claimant's impairments meets or equals an impairment listed in Appendix 1 to Subpart P of the Social Security regulations.  *See* 20 C.F.R. § 416.920(a)(4)(iii).  Each listing sets forth the "symptoms, signs, and laboratory findings" that must be established for a claimant's impairment to meet the listing.  *Tackett*, 180 F.3d at 1099.  If a

ORDER GRANTING DEFENDANT'S MOTION . . . - 4

claimant meets or equals a listing, the claimant is considered disabled with no need for further inquiry.  *See* 20 C.F.R. § 416.920(d).  As a result of that presumption of disability, "[l]isted impairments are set at a high level of severity." *Hubbell v. Kijakazi*, 2023 WL 6620305 at *1 (9th Cir. 2023).

It is Plaintiff's responsibility to prove she is disabled at step three by establishing she has an impairment that meets or equals a listing impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *Tackett*, 180 F.3d at 1098-1099.  To meet a listing, Plaintiff must "present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)).

To meet the required level of severity for Listing 4.02, a claimant must satisfy both the Paragraph A and Paragraph B criteria, **while on a regimen of prescribed treatment**, and with the symptoms and signs described in Listing 4.00(D)(2) including:  cardiomegaly or ventricular dysfunction, demonstrated by medically acceptable imaging, or symptoms and signs of pulmonary or systemic congestion or of limited cardiac output, such as fatigue, weakness, dyspnea, cough, chest discomfort at rest or with activity, cardiac arrhythmias resulting in palpitations, lightheadedness or fainting, peripheral edema, rales, rapid weight gain, ascites, increased jugular venous distention or pressure, or hepatomegaly.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 4.02 (emphasis added).  Paragraph A requires either 1) medically documented systolic failure with left ventricular end diastolic dimensions greater than 6.0 cm or **ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure)**; or 2) diastolic failure, with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure).  20 C.F.R. Pt. 404, Subpt. P, App. 1,

ORDER GRANTING DEFENDANT'S MOTION . . . - 5

Listing 4.02A (emphasis added). Paragraph B requires one of the following: 1) persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom a medical consultant, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or 2) three or more separate episodes of acute congestive heart failure within a consecutive 12-month period, with evidence of fluid retention from clinical and imaging assessments at the time of the episodes, **requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more**, **separated by periods of stabilization**; or 3) inability to perform an exercise tolerance test at a workload equivalent to 5 METs or less due to: a. dyspnea, fatigue, palpitations, or chest discomfort; or b. three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or c. decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise due to left ventricular dysfunction, despite an increase in workload; or d. signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 4.02B (emphasis added).

The Court notes at the outset that Defendant's briefing provides a persuasive argument that Plaintiff has failed to meet her burden to establish the basic requirement of Listing 4.02 to show she was "on a regimen of prescribed treatment" during the relevant time period. ECF No. 14 at 3-4. It does not appear Plaintiff was on a regimen of prescribed treatment or that she had quit using methamphetamine at the time of her cardiac testing. However, these were not the reasons given by the ALJ for finding that Plaintiff did not meet or equal the severity of Listing 4.02. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219,

ORDER GRANTING DEFENDANT'S MOTION . . . - 6

1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").  Accordingly, as asserted by Plaintiff, ECF No. 15 at 1, the *post hoc* rationalizations cannot be used to sustain the decision.

Paragraph A of Listing 4.02 requires an "ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure)." Listing 4.02 thus defines "a period of stability" as during a time the claimant is not suffering an episode of acute heart failure.  Here, the ALJ found Listing 4.02A was not met because Plaintiff did not have an echo "during a period of stability" showing an ejection fraction value of 30% or less.  Tr. 24.  The ALJ specifically found Plaintiff's ejection fraction value of 20% recorded in October 2024 was not during "a period of stability" because Plaintiff had suffered a stroke.  Tr. 24.  A stroke (brain blockage) is not an acute heart failure (the sudden inability of the heart to pump enough blood).  Therefore, the ALJ erred by determining the ejection fraction value of 20% in October 2024 was not recorded during "a period of stability."

Regarding Paragraph B criteria, Plaintiff specifically contends the ALJ erred by neglecting to consider whether Plaintiff met Listing 4.02B(2) by experiencing three or more separate episodes of acute congestive heart failure within a consecutive 12-month period requiring acute extended physician intervention such as hospitalization or emergency room treatment **for 12 hours or more**, separated by periods of stabilization.  ECF No. 12 at 4-6.  However, as conceded by Plaintiff, she did not stay in acute care for 12 hours or more on four documented instances (she was in the emergency room for under 12 hours because she left against

ORDER GRANTING DEFENDANT'S MOTION . . . - 7

medical advice on three of the four noted occasions).  ECF No. 12 at 5-6.  The record thus reflects that Plaintiff does not meet the Paragraph B criteria.

To meet the required level of severity for Listing 4.02, Plaintiff must satisfy both the Paragraph A and Paragraph B criteria.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 4.02; *see Kristie B., o.b.o., Scottie J. B. v. Bisignano*, 2025 WL 2544025 at *6 (E.D. Wash. Sept. 4, 2025).  While Plaintiff has demonstrated the ALJ erred with respect to his analysis of the Paragraph A criteria, *see supra*, this error is harmless because Plaintiff has not shown she meets the Paragraph B criteria.[1]  An ALJ's decision will not be reversed for harmless errors.  *Burch*, 400 F.3d at 679 (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991); *Johnson v. Shalala*, 60 F.3d 1428, 1436 n. 9 (9th Cir. 1995) (An error is harmless when the correction of that error would not alter the result); *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (An ALJ's decision should be affirmed even in the presence of legal error "where that error is harmless, meaning that it is inconsequential to the ultimate nondisability determination").  Accordingly, the Court finds Plaintiff is not entitled to a remand on this issue.

**B.    Untimely Submitted Evidence**

Plaintiff's motion asserts the ALJ also erred by failing to consider a medical report of Scott Miller, PA-C, that was submitted after the conclusion of the administrative hearing but before the ALJ's decision was entered.  ECF No. 12 at 6-8.

The ALJ indicated there was no mention of the medical source statement of PA-C Miller prior to the hearing or at the hearing when the record was closed, and it was submitted after the hearing with no request for the record to be reopened and with no argument regarding an exception to the five-day rule.  Tr. 18.  The ALJ,

---

[1]To meet a listing, Plaintiff must prove all of the specified medical criteria for a listing.  *Kennedy*, 738 F.3d at 1174 (citing *Sullivan*, 493 U.S. at 531).

ORDER GRANTING DEFENDANT'S MOTION . . . - 8

finding the requirements of 20 C.F.R. § 416.1435(b) had not been met, declined to admit PA-C Miller's medical source statement.  Tr. 18.

Where, as here, a party submits evidence less than five business days before the administrative hearing, the ALJ "may decline to consider or obtain the evidence" unless an exception applies.  20 C.F.R. § 416.1435(a).  One exception provides that an ALJ may accept the evidence if an "unusual, unexpected, or unavoidable circumstance beyond [Plaintiff's] control prevented [her] from informing [the Commissioner] about or submitting the evidence earlier," including when Plaintiff "actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing."  20 C.F.R. § 416.1435(b).

Plaintiff asserts the "unavoidable circumstance" exception applies in this case because Plaintiff's attorney was unaware of the existence of PA-C Miller's report as of the deadline and it was only received just prior to the hearing.  ECF No. 12 at 7; ECF No. 15 at 4.  However, Plaintiff has not established active or diligent pursuit of the evidence, nor has she demonstrated any other "unusual, unexpected, or unavoidable circumstance beyond [her] control" that would have required the ALJ to consider the late-submitted medical report of PA-C Miller. *See* 20 C.F.R. § 416.1435(b)(3) (examples include "(i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person; (ii) There was a death or serious illness in your immediate family; (iii) Important records were destroyed or damaged by fire or other accidental cause; or (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing").  As argued by Defendant, passive pursuit of evidence is not the type of "unavoidable circumstance" warranting an exception.  ECF No. 14 at 6. The Court finds that because Plaintiff has not satisfied the requirements for the

///

ORDER GRANTING DEFENDANT'S MOTION . . . - 9

"unavoidable circumstance" exception to the five-day rule, the ALJ did not err by failing to consider the medical source statement of PA-C Miller.

**C.    Step Two**

Plaintiff contends the ALJ reversibly erred by finding Plaintiff's stroke was non-severe. ECF No. 12 at 8-10; ECF No. 15 at 7-8.

At step two of the sequential evaluation process, Plaintiff has the burden of proving she has a severe impairment. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 423(d)(1)(A), 416.912. In order to meet this burden, Plaintiff must furnish medical and other evidence that shows her impairment is severe. 20 C.F.R. § 416.912(a). The regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c), provide that an impairment is severe if it satisfies the duration requirement and significantly limits one's ability to perform basic work activities. *See Sullivan*, 493 U.S. at 525. An impairment is considered non-severe if it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. "Basic work activities" are defined as the abilities and aptitudes necessary to do most jobs. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b).

Step two is "a de minimis screening device [used] to dispose of groundless claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when this conclusion is "clearly established by medical evidence." S.S.R. 85-28; *Webb v. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005). Applying the normal standard of review to the requirements of step two, the Court must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Plaintiff did not have a medically severe impairment. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."); *Webb*, 433 F.3d at 687.

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

The ALJ discussed Plaintiff's October 2024 stroke and properly determined the impairment did not meet the durational requirement[2] for a severe medically determinable impairment.  Tr. 20-21.  Plaintiff suffered a stroke in October 2024.  Tr. 1153-1154.  As explained by the ALJ, while Plaintiff experienced reduced strength/motor activity immediately after the stroke, Tr. 1200, 1217, Plaintiff improved significantly within one month, Tr. 1389-1390, and again five months after the stroke when Plaintiff exhibited normal strength, Tr. 1326.  Tr. 20, 30.  The ALJ also addressed Plaintiff's testimony of poor memory since the stroke, noting the record did not show that Plaintiff made those complaints to her treatment providers except in the days immediately following the stroke, Tr. 1217, and that she was never referred to rehabilitation for cognitive or other therapy.  Tr. 22.  As noted by Defendant, Plaintiff did not complain about memory or other cognitive difficulties in subsequent exams.  *See* Tr. 1324, 1340, 1352, 1364.

The ALJ's determination that Plaintiff's stroke did not constitute a severe impairment at step two of the sequential evaluation process is supported by substantial evidence because the condition did not meet the durational requirements for a severe medically determinable impairment:  Plaintiff failed to demonstrate her stroke significantly limited her ability to perform basic work activities for 12 consecutive months.  Consequently, Plaintiff is not entitled to a remand on this issue.

**D.     Develop the Record**

Plaintiff also contends that the ALJ erred by failing to fully and fairly develop the record.  ECF No. 12 at 10-13; ECF No. 15 at 8-10.

---

[2]An individual shall be considered disabled if he has an impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  *See* 20 C.F.R. §§ 404.1509, 416.909; 42 U.S.C. § 423(d)(1)(A).

The ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ must scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts, being especially diligent to ensure favorable as well as unfavorable facts are elicited. *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992). An ALJ's duty to further develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan*, 242 F.3d at 1150.

At the administrative hearing, Plaintiff's counsel requested an updated physical consultative examination be ordered "if we're not able to approve based off the records." Tr. 45. The ALJ specifically addressed the request by indicating the medical evidence was sufficient to make a decision; Plaintiff had already failed to attend two previously scheduled consultative examinations, Tr. 384, 608; and such an exam could not be ordered because Plaintiff had failed to provide a medical release despite her representative's request, Tr. 43-44. Tr. 17-18.

The undersigned agrees with the ALJ that based on Plaintiff's history of no-shows and her failure to sign a medical release, ordering an additional consultative examination may have been futile. Moreover, the administrative record was sufficiently complete, containing over 1400 pages, with 16 medical exhibits. The record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. *See infra* (Section E(1)). Plaintiff is not entitled to a remand on this issue.

## E.    Plaintiff's Symptom Claims

Plaintiff contends the ALJ also erred by improperly rejecting her subjective complaints. ECF No. 12 at 13-20.

It is the province of the ALJ to make determinations regarding a claimant's subjective statements. *Andrews,* 53 F.3d at 1039. However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229,

ORDER GRANTING DEFENDANT'S MOTION . . . - 12

1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) ("Ultimately, the 'clear and convincing' standard requires an ALJ to show [their] work[.]"). Thus, to satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony. *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (emphasis in original).

Here, the ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, inconsistencies undermined the weight that could be given to Plaintiff's symptom reports. Tr. 26.

### 1. Objective Medical Evidence

The ALJ first found that the objective medical evidence of record did not support the degree of limitation alleged by Plaintiff. Tr. 26-30.

An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-347 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680. However, the objective medical evidence is a relevant factor, along with the medical source's information

ORDER GRANTING DEFENDANT'S MOTION . . . - 13

about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

Here, the ALJ noted Plaintiff had known cardiomyopathy and chronic systolic heart failure, as well as hypertension and ongoing methamphetamine use, at the time of her alleged disability onset, February 21, 2023, and her providers concluded that the cardiomyopathy was methamphetamine induced, Tr. 298. Tr. 26. As indicated by the ALJ, Tr. 27-30, the record reflects the following: Plaintiff was discharged from methadone replacement for missed appointments on May 11, 2023, Tr. 376; Hilary Conway, M.D., noted on July 11, 2023, that Plaintiff had not taken her medications for four days because she had not picked up her refills, Tr. 444; by September 2023 Comprehensive Healthcare reported Plaintiff was no longer attending group sessions, Tr. 420, and subsequently aborted treatment, Tr. 426; a physical exam by Catherine Albright, M.D., was unremarkable on September 12, 2023, Tr. 517-521 (noting Plaintiff's pregnancy was being affected by her ongoing use of methamphetamine and fentanyl); on September 27, 2023, a physical exam was unremarkable, including heart and lungs, and it was noted that Plaintiff was still using methamphetamine and had multiple no-shows, Tr. 1395-1396; on December 5, 2023, Dr. Conway noted Plaintiff reported she was still using fentanyl and methamphetamine and smoking a pack of cigarettes per day and had multiple no-shows for echo appointments that resulted in a canceled referral, Tr. 458-459; on February 15, 2024, Plaintiff was transferred to the University of Washington's maternity intensive care unit with acute decompensated heart failure and pre-eclampsia, with delivery on February 18, 2024, Tr. 622, 683-685; on March 30, 2024, Plaintiff presented to the ER with chest pain, orthopnea, and shortness of breath and although transport to the University of Washington was arranged, Plaintiff eloped, Tr. 1069; on April 30, 2024, Plaintiff tested positive for methamphetamine, Tr. 1061; on September 17, 2024, Plaintiff, on exam, was not

ORDER GRANTING DEFENDANT'S MOTION . . . - 14

toxic appearing and her pulmonary effort, range of motion, mood, and thought content were normal, Tr. 626-627; on September 26, 2024, Plaintiff again presented to the ER with cardiac related symptoms and discharged against medical advice, Tr. 1265; on October 2, 2024, Plaintiff presented for a follow-up after the ER visit and it was noted she was using methamphetamine daily but, on exam, she was not toxic appearing and her cardiovascular rate and rhythm, pulmonary effort, range of motion, mood, and thought content were normal, Tr. 629-631; on October 3, 2024, Plaintiff was taken to the ER with altered mental state (subsequently determined to be stroke), Tr. 1153-1154, and it was noted she tested positive for methamphetamine, Tr. 1229; on October 18, 2024, Plaintiff presented for a follow-up for the October 3, 2024 event, and, on exam, she was not toxic appearing and her cardiovascular rate and rhythm, pulmonary effort, range of motion, mood, and thought content were normal, Tr. 633-634; on November 6, 2024, cardiologist Paul Hanna, M.D., indicated Plaintiff reported daily methamphetamine use but planned to enter inpatient treatment and had an unremarkable exam, with normal heart findings, no lower extremity edema, and normal mood and affect, Tr. 1376-1380; Dr. Hanna discussed the benefit of cessation of methamphetamine use, noting it was likely the etiology of her cardiomyopathy and that her ejection fraction may improve with abstinence, Tr. 1383; methamphetamine use was again noted on January 16, 2025, Tr. 1364, but, on February 19, 2025, Plaintiff reported no methamphetamine use since January 16, 2025, and that her blood pressure had been "normal," Tr. 1340; and, on March 4, 2025, Plaintiff followed up with PA-C Miller, reporting she had not been 100% compliant with her heart medications, Tr. 1324, but, on exam, her heart and lung findings were unremarkable, there was no edema in her lower extremities, sensory and strength were equal bilaterally, and her affect and mood were appropriate, Tr. 1326.  In addition, state agency reviewing physicians, Ruth Childs, M.D., Tr. 79-81 (June 12, 2023), and Denise

///

ORDER GRANTING DEFENDANT'S MOTION . . . - 15

Trowbridge, M.D., Tr. 87-90 (February 24, 2024), noted Plaintiff's history and opined Plaintiff's medical issues did not result in disabling limitations.

The Court finds the objective medical evidence of record, as discussed above, shows Plaintiff had impairments and restrictions, but it does not support the degree of limitation alleged by Plaintiff in this case, and, therefore, this was a valid, clear and convincing reason to discount Plaintiff's subjective complaints.

*2. Work History*

The ALJ indicated that, inconsistent with Plaintiff's claim of debilitating limitations, Plaintiff stated she last worked about a year prior to the administrative hearing, washing dishes at a restaurant for a couple of weeks. Tr. 30. Employment performed "during any period" of claimed disability may be probative of a claimant's ability to work at the substantial gainful activity level. 20 C.F.R. §§ 404.1571, 416.971; *see Bray*, 554 F.3d at 1227 (the ability to perform part-time work can be considered in assessing credibility).

The ALJ also noted Plaintiff initially testified she had not continued in that job because of transportation issues, not because of her impairments. Tr. 30 referencing Tr. 54-55. The inability to work due to nondisability factors is a valid basis for rejecting a claimant's credibility. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (stating that in making a credibility determination, the ALJ did not err by considering that claimant left his job because he was laid off, rather than because he was injured).

The ALJ properly discounted Plaintiff's credibility on the basis that she performed work during the period she alleged disability and stopped working for reasons unrelated to her alleged disabling impairments.

*3. Inconsistencies*

The ALJ also discounted Plaintiff's symptom claims based on inconsistencies. Tr. 30-31.

///

ORDER GRANTING DEFENDANT'S MOTION . . . - 16

An ALJ may consider inconsistencies in a claimant's testimony or inconsistencies between a claimant's testimony and conduct when assessing subjective complaints. *Orn*, 495 F.3d at 636; *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002) (inconsistencies in a claimant's testimony may be used to discredit subjective complaints); *Fair*, 885 F.2d at 604 n.5 (an ALJ can reject pain testimony based on contradictions in a plaintiff's testimony).

### a. Exhaustion

The ALJ found that Plaintiff's allegation of inability to continue to work based on exhaustion was unsupported. Tr. 30. Although the ALJ agreed that Plaintiff could experience exhaustion during exacerbations in cardiac symptoms, the ALJ found insufficient evidence of exhaustion to the degree alleged, noting Drs. Childs and Trowbridge found a lack of fatigue, Plaintiff did not follow up on her alleged fatigue/exhaustion complaint with providers (appearing fatigued only when withdrawing from methamphetamine or immediately after the stroke or short-term illness), and Plaintiff was often described as alert when seen by providers. Tr. 30.

### b. Medication Side-Effects

The ALJ additionally noted Plaintiff testified that her medications sometimes caused dizziness/lightheadedness, shortness of breath, or fluid retention. Tr. 30. However, the record reflects Plaintiff had denied these medication side-effects to treating providers who were in a position to help her with her situation and only claimed dizziness in the weeks after the stroke and only showed edema at some visits, including when pregnant.

### c. Mental Health Limitations

The ALJ also indicated Plaintiff's assertions of mental health limitations were inconsistent with her observed functioning. Tr. 31. While Plaintiff argues the ALJ "failed to explain what parts of the record contradicted what portions of her testimony," the ALJ specifically referred to his detailed discussion at step two.

ORDER GRANTING DEFENDANT'S MOTION . . . - 17

Tr. 31. At step two, the ALJ held that Plaintiff has been diagnosed with mental impairments, but she did not testify to problems related to a mental condition, aside from asserting a memory issue since the October 2024 stroke. Tr. 21. The ALJ further explained, as discussed above, that Plaintiff's stroke/memory complaints were not made to her treatment providers, except in the days immediately following the stroke, and that she was never referred to rehabilitation for cognitive or other therapy and did not complain about memory or other cognitive difficulties in subsequent exams. Tr. 22.

The ALJ's reference to the above inconsistencies is supported by substantial evidence, and this was an additional clear and convincing reason to discount Plaintiff's symptom claims.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, and based on the foregoing, the Court finds that the ALJ provided clear and convincing reasons, which are fully supported by the record, for finding Plaintiff's symptom allegations were not entirely credible in this case. Plaintiff is not entitled to a remand on this issue.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS HEREBY ORDERED:**

1.    Defendant's motion to affirm, **ECF No. 14**, is **GRANTED**.

2.    Plaintiff's motion to reverse, **ECF No. 12**, is **DENIED**.

ORDER GRANTING DEFENDANT'S MOTION . . . - 18

**IT IS SO ORDERED**.  The District Court Executive shall file this Order and provide copies to counsel.  **Judgment shall be entered for Defendant and the file shall be CLOSED**.

DATED July 9, 2026.



_____

ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 19